# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **CONTEERS LLC,** | **CASE NO. 5:20-CV-00542** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **CITY OF AKRON, SUMMIT COUNTY, OHIO, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon the Motion for Preliminary Injunction of Plaintiff Conteers LLC ("Conteers") filed on March 17, 2020.  (Doc. No. 5.)  Defendants City of Akron, Summit County, Ohio (the "City") and Akron City Council (the "City Council") (collectively, "Defendants") filed a brief in opposition to Conteers' Motion for Preliminary Injunction on May 4, 2020, to which Conteers replied on June 25, 2020.  (Doc. Nos. 12, 23.)

Also, currently pending is Defendants' Motion for Judgment on the Pleadings filed on May 12, 2020.  (Doc. No. 14.)  Conteers filed a brief in opposition to Defendants' Motion for Judgment on the Pleadings on June 25, 2020, to which Defendants replied on July 20, 2020.  (Doc. Nos. 24, 26.)

For the following reasons, Defendants' Motion for Judgment on the Pleadings (Doc. No. 14) is DENIED, and Conteers' Motion for Preliminary Injunction (Doc. No. 5) is GRANTED IN PART and DENIED IN PART.

## I.    Background

### a.   Factual Background

Conteers is in the business of buying or leasing land upon which to construct, maintain, and operate billboards.  (Doc. No. 1 at ¶ 9; Doc. No. 5-2 at ¶ 3.)[1]  Conteers leased property located at 475 East North Street, Akron, Ohio with the intention of erecting a billboard on the property.  (Doc. No. 1 at ¶¶ 10-13; Doc. No. 5-2 at ¶¶ 4-7.)  The intended location of the billboard is on a surface street—North Street—adjacent to State Road 8.  (Doc. No. 1 at ¶ 14; Doc. No. 5-2 at ¶ 8.)  State Road 8 crosses North Street via an approximately 150-foot tall bridge over North Street.  (Doc. No. 1 at ¶ 15; Doc. No. 5-2 at ¶ 9.)  Because of the difference in elevation between the leased property and the bridge above, Conteers sought to erect a 202-foot tall billboard so that passengers in vehicles on State Road 8 could see it.  (Doc. No. 1 at ¶ 34; Doc. No. 5-2 at ¶ 10.)  The intended billboard would be a double-faced digital billboard, with the face made primarily of steel.  (Doc. No. 1 at ¶¶ 34-36; Doc. No. 5-2 at ¶¶ 24-26.)

On July 24, 2019, Conteers obtained a permit for its billboard from the Ohio Department of Transportation.  (Doc. No. 1 at ¶ 16; Doc. No. 5-2 at ¶ 12.)

Shortly thereafter, on August 2, 2019, Conteers submitted an application to the City for a sign permit for its intended billboard.  (Doc. No. 1 at ¶ 32; Doc. No. 5-2 at ¶ 23.)  Chapter 153 of the City's Code of Ordinances, which is entitled "Zoning Code," regulates the placement of outdoor advertising displays, which includes billboards.  *See* Akron Code of Ordinances ("A.C.O.") § 153.140.  Pursuant to the Zoning Code, a billboard may be permitted as a conditional use.  A.C.O. §

---

[1] The allegations contained in Conteers' Complaint are assumed to be true solely for purposes of ruling on Defendants' Motion for Judgment on the Pleadings.  For purposes of assessing Conteers' Motion for Preliminary Injunction, the Court also cites to the evidence submitted by the parties in conjunction with their briefing on that Motion.

153.464(Y).  The City Council has the ultimate authority to grant or deny a conditional use for a billboard, and there is no requirement that its decision be made within any specified time.  *See* A.C.O. §§ 153.488, 153.476(D).  However, applicants may appeal the City Council's decision to the Summit County Court of Common Pleas.  A.C.O. § 153.498.

Article 9 of the Zoning Code lays out the specific requirements for billboards.  Article 9 contains only one section—Section 153.385.  Thus, the Court will refer to Article 9 and Section 153.385 interchangeably.  As relevant here, Section 153.385(A) sets forth the "[d]evelopment requirements for outdoor advertising displays permitted as a conditional use," including certain size, height, and set-back requirements.  A.C.O. § 153.385(A).  With respect to height limits, Section 153.385(A)(6) provides that "[n]o ground bulletin whose supports and braces are of steel or other approved noncombustible material, and whose face is of noncombustible construction FRTW wood as approved by the Superintendent of Building Inspection and Regulation shall exceed the height district as found in this code or of a maximum height of fifty feet, whichever is less."  A.C.O. § 153.385(A)(6).

Section 153.385(F) of Article 9 also incorporates the general standards applicable to all conditional uses set forth in Section 153.474 of Article 14 of the Zoning Code.  A.C.O. § 153.385(F) ("The outdoor advertising display must conform to the requirements of Section 153.474.").  Article 14 governs the approval of conditional uses generally.  Section 153.474 provides:

> The planning staff, the City Planning Commission, and Council, when studying a petition for a conditional use, shall review the particular facts and circumstances of each proposed use in terms of the following standards, and if taking favorable action on the proposal, shall find adequate evidence that the use:
>
> > A.  Will be harmonious with and in accordance with the general objectives of the City's Comprehensive Plan;

3

B.  Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the same area;

C.  Will not be hazardous or disturbing to existing or future neighboring uses;

D.  Will be served adequately by essential public facilities such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewers and schools; or that the person or agency responsible for the establishment of the proposed use shall be able to provide adequately any such services;

E.  Will not create excessive additional requirements at public cost for public facilities and services, and will not be detrimental to the economic welfare of the community,

F.  Will not involve uses, activities, processes, materials, equipment, and conditions of operation that will be detrimental to any person or property or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or odors;

G.  Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public streets or roads;

H.  Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance.

A.C.O. § 153.474.

If these criteria are met, the City Council may also permit a billboard to vary from the specific size, height, and set-back requirements set forth in Article 9. *See* A.C.O. § 153.385(F) ("Council may except or increase any of the provisions in this chapter consistent with the provisions of Section 153.474."). For example, the City Council has allowed at least three billboards within the City that are over fifty feet tall. (Doc. No. 1 at ¶ 68; Doc. No. 5-2 at ¶¶ 43-46.)

In addition to the general standards set forth in Section 153.474 that apply to all conditional uses, Article 14 also contains requirements specific to certain types of conditional uses. *See* A.C.O.

4

§ 153.476. Article 14 also provides, with regard to its overall intent, that "[i]t is recognized that an increasing number of new kinds of uses are appearing daily, and that many of these and other more conventional uses possess characteristics of such unique and special nature relative to the location, design, size, method of operation, traffic circulation, and need for public facilities that each specific use must be considered individually." A.C.O. § 153.462.

Before Conteers' application for a permit for its billboard reached the City Council for a final decision based on the standards described above, it underwent several reviews by other commissions. First, the Urban Design and Historic Preservation Commission ("UDHPC") conducted an independent aesthetic review. (Doc. No. 1 at ¶¶ 39-40; Doc. No. 5-2 at ¶ 27.) UDHPC "acts[s] in an advisory capacity to the City government in connection with historic preservation of the City." *See* A.C.O. §§ 31.391-93. On November 5, 2019, about three months after Conteers first submitted its application, UDHPC recommended denying the application because the billboard was "not suitable" for the location. (Doc. No. 1 at ¶¶ 59-60; Doc. No. 5-2 at ¶ 36; Doc. No. 5-3 at 2.) UDHPC noted that the adjacent State Road 8 bridge was being completely replaced and that "great attention" had been given to creating an "attractive design" for that bridge. (Doc. No. 1 at ¶ 61; Doc. No. 5-3 at 2.) UDHPC believed that, due to the height of the billboard, it would "appear out of place, both adjacent to the bridge and overlooking the forested Little Cuyahoga River valley below." (Doc. No. 1 at ¶ 62; Doc. No. 5-3 at 2.) The City's Planning Department then issued a report and recommendation that also recommended the denial of Conteers' permit application for similar reasons. (Doc. No. 1 at ¶¶ 63-64; Doc. No. 5-4 at 2-3.) Subsequently, on November 15, 2019, the City's Planning Commission met and voted to deny the permit application as well. (Doc. No. 1 at ¶ 65; Doc. No. 5-4 at 4.)

5

Finally, on February 10, 2020, the City Council met and voted to deny Conteers' application. (Doc. No. 1 at ¶ 66; Doc. No. 5-2 at ¶¶ 40-41; Doc. No. 14-5 at ¶ 3.)  The City Council noted two reasons for denying Conteers' permit application: (1) the height of the proposed billboard was over fifty feet, and (2) the "aesthetics" of the billboard.  (Doc. No. 1 at ¶ 67; Doc. No. 5-2 at ¶ 42.)

### b.  Procedural History

On March 11, 2020, Conteers filed a Complaint against Defendants in this Court, setting forth three causes of action.  (Doc. No. 1.)  In its first cause of action, Conteers alleges that the City's Code of Ordinances violates the First and Fourteenth Amendments of the United States Constitution, as well as the Ohio Constitution, because it contains unconstitutional prior restraints on speech since it lacks certain procedural safeguards and provides Defendants unbridled discretion with respect to permitting decisions.  (*Id.* at ¶¶ 74-87.)  In its second cause of action, Conteers alleges that Defendants have favored certain speakers over Conteers by allowing three other similar billboards that are over fifty feet to be operated within the City in violation of the First Amendment and the Equal Protection Clause.  (*Id.* at ¶¶ 88-93.)  Finally, in its third cause of action, Conteers appeals the City Council's decision denying its permit application.  (*Id.* at ¶¶ 94-99.)  Conteers seeks a declaration that the City's Code of Ordinances is unconstitutional, either in whole or in part, on its face and as applied to Conteers, a permanent injunction precluding Defendants from enforcing the City's Code of Ordinances against Conteers, an award of damages pursuant to 42 U.S.C. § 1983, and an order overturning the City Council's denial of Conteers' permit application.  (Doc. No. 1 at Pg. 13-14.)

On March 17, 2020, about a week after the filing of its Complaint, Conteers filed a Motion for Preliminary Injunction, seeking to preliminarily enjoin Defendants from both enforcing Articles 9 and 14 of the Zoning Code against Conteers and preventing Conteers from erecting the billboard

consistent with its permit application. (Doc. No. 5.) Defendants filed a brief in opposition to Conteers' Motion for Preliminary Injunction on May 4, 2020. (Doc. No. 12.) Before filing a reply, Conteers requested permission to conduct limited discovery in the form of a two-hour deposition of the City Council's President. (Doc. No. 17.) After receiving position papers from the parties on the issue, the Court granted Conteers' request. (Doc. Nos. 20-22.) On June 25, 2020, after conducting the requested deposition, Conteers filed its reply in support of its Motion for Preliminary Injunction. (Doc. No. 23.)

While briefing was ongoing with respect to Conteers' Motion for Preliminary Injunction, Defendants also filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), seeking the dismissal of all of Conteers' claims for a variety of reasons. (Doc. No. 14.) Conteers filed a brief in opposition to Defendants' Motion for Judgment on the Pleadings on June 25, 2020, to which Defendants replied on July 20, 2020. (Doc. Nos. 24, 26.)

## II. Defendants' Motion for Judgment on the Pleadings

### a. Standard of Review

Pursuant to Rule 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603,

605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

8

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### b.  Analysis

#### i.  Jurisdiction

In their Motion for Judgment on the Pleadings, Defendants first argue that Conteers' third cause of action should be dismissed because the Court lacks subject-matter jurisdiction over Conteers' administrative appeal of the City Council's decision.  (Doc. No. 14 at 3-4.)[2]  Specifically, Defendants assert that Conteers did not perfect its appeal until it served its Complaint on Defendants, which then vested jurisdiction over the appeal with the Summit County Court of Common Pleas as mandated by the Ohio Revised Code.  (Doc. No. 14 at 3-4; Doc. No. 26 at 7-10.)  In addition, Defendants assert that even if Conteers was not required to appeal to the Summit County Court of Common Pleas, Conteers still had no right to appeal to this Court because that right was not provided by the relevant statutory provision.  (Doc. No. 26 at 9.)  In response, Conteers contends that it was not required to file its appeal in the Summit County Court of Common Pleas, and, as a result, Conteers was free to file its appeal in this Court as long as its appeal satisfied the requirements for supplemental jurisdiction.  (Doc. No. 24 at 17-18.)  Upon review, the Court concludes that it has jurisdiction over Conteers' administrative appeal.

---

[2] The Court notes that although Defendants moved to dismiss Conteers' claims under Rule 12(c), their contention that the Court lacks subject-matter jurisdiction over Conteers' administrative appeal is treated in the same manner as if Defendants' Motion had been brought under Rule 12(b)(1).  *See Encore Energy, Inc. v. Morris Kentucky Wells, LLC*, No. 1:18-CV-00180-GNS-HBB, 2020 WL 353233, at *1 (W.D. Ky. Jan. 21, 2020) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).") (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. Aug. 2019 update)).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)).

The Supreme Court has held that supplemental jurisdiction under 28 U.S.C. § 1367(a) may "encompass[] state law claims for on-the-record review of local administrative action." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 171 (1997); *see also Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 280 (6th Cir. 2014). Importantly, multiple courts also have held that supplemental jurisdiction over an administrative appeal was proper even though the relevant state law mandated that the appeal occur in state court. For example, in *West v. Kentucky Horse Racing Comm'n*, the plaintiffs filed an appeal directly in federal court of racing officials' decision to disqualify their horse from the Kentucky Derby. 425 F. Supp. 3d 793, 798 (E.D. Ky. 2019). Defendants moved to dismiss the appeal for lack of subject-matter jurisdiction because the Kentucky statute governing judicial review of agency final orders provided that "[a] party shall institute an appeal by filing a petition in the Circuit Court of venue." *Id.* at 801. Although the statute did "not explicitly provide for an appeal in federal court," the court nonetheless found that federal jurisdiction existed, reasoning that "the jurisdiction of the federal courts 'cannot be limited or taken away by state statutes.'" *Id.* at 801-02 (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 798 (6th Cir. 2012)). Indeed, "[a] state cannot confer rights upon private parties and require that litigation between

10

those parties must be confined to the courts of the state itself." *Id.* at 802 (quoting *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 788 (9th Cir. 2009)).

Based on the same reasoning, the Eight Circuit concluded that jurisdiction over the appeal of a state agency's decision existed even though "Minnesota's statute outlines only a state-court mechanism for appeal." *Wong v. Minnesota Dep't of Human Services*, 820 F.3d 922, 932 (8th Cir. 2016). The court held that the relevant statute "lays out one permissible route through which an aggrieved party may appeal from the Commissioner's order and thus prevent it from becoming final, but it does not strip the federal court of its authority to hear the same appeal through the exercise of supplemental jurisdiction." *Id.*; *see also Bradberry v. Jefferson Cty., Texas*, 732 F.3d 540, 554-55 (5th Cir. 2013) ("Whatever Section 613.021 means for state court lawsuits, it is no barrier to the exercise of supplemental jurisdiction in federal court."); *BNSF*, 572 F.3d at 788 (rejecting the defendant's argument that the plaintiff could not file an original action in federal court because the appeal procedure set forth in Montana law provided that a petition for review must be filed in state court).

In this case, the Zoning Code provides that "[a] holder of a conditional use may appeal City Council's action on that conditional use to the Summit County Court of Common Pleas pursuant to O.R.C. Chapter 2506." A.C.O. § 153.498. Ohio Revised Code § 2506.01(A) similarly provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." Ohio Rev. Code § 2506.01(A). Thus, Conteers clearly had the right to appeal the City Council's decision. Further, although the parties dispute whether Ohio Revised Code § 2506.01(A)

11

requires that an administrative appeal occur in the court of common pleas, that conclusion ultimately is not relevant to the question of jurisdiction.  That is because, in accordance with the principles discussed above, even assuming the Zoning Code or the Ohio Revised Code purport to require Conteers to file its appeal in state court, those provisions cannot limit federal courts' jurisdiction. Accordingly, Conteers had the right to file its appeal directly in federal court as long as federal supplemental jurisdiction exists.

With respect to whether supplemental jurisdiction exists, there is no dispute that Conteers' claims based on Defendants' alleged violations of the First Amendment are federal claims.  In addition, Conteers' state administrative appeal involves many of the same factual issues as its federal claims, as both center around the denial of its application for permission to construct a billboard on its property.  As such, Conteers' state and federal claims derive from a common nucleus of operative facts and form part of the same case or controversy sufficient to create supplemental jurisdiction over Conteers' appeal.  *See Hucul*, 748 F.3d at 281.  Further, Defendants have not requested that the Court decline to exercise supplemental jurisdiction, and the Court finds that none of the reasons provided in 28 U.S.C. § 1367(c) for declining to exercise supplemental jurisdiction over state-law claims are applicable.  Accordingly, the Court can and will exercise jurisdiction over Conteers' appeal of the City Council's decision.[3]

---

[3] Defendants also argue that the portion of Conteers' Complaint containing the administrative appeal is "essentially a nullity" because Conteers' appeal was not perfected until after service of the Complaint.  (Doc. No. 14 at 4.)  Defendants cite no authority as to why dismissal is appropriate simply because the appeal had not been perfected at the time of filing, and the Court finds their argument unpersuasive.

Further, in Defendants' reply in support of their Motion for Judgment on the Pleadings, they include a footnote in which they argue that Conteers' claims should also be dismissed to the extent Conteers raises an as-applied constitutional challenge because those issues also should be decided by the state court in Conteers' administrative appeal.  (Doc. No. 26 at 10 n.4.)  Because the Court finds jurisdiction appropriate in this Court, the Court finds Defendants' argument in this regard unpersuasive as well.

### ii. Standing

Next, Defendants argue that Conteers' first and second causes of action should be dismissed because Conteers lacks standing to challenge the City's conditional use criteria set forth in Section 153.474 and incorporated by Section 153.385(F).  (Doc. No. 14 at 4-9.)  Defendants assert that even if Section 153.474 is invalidated by the Court as violating the First Amendment, the City Council would still be justified in denying Conteers' permit application based on the billboard's violation of the fifty-foot height limit in Section 153.385(A)(6).  (*Id.* at 5-6.)  As a result, Defendants contend that success in challenging Section 153.474 will not redress any injury suffered by Conteers.  (*Id.*)  In opposition, Conteers asserts that standing exists because the fifty-foot height limit is inapplicable to Conteers' proposed billboard, multiple billboards over fifty feet in height have been permitted in the City, and Conteers requested an exception from the fifty-foot height limit even if it did apply.  (Doc. No. 24 at 4-5.)  Conteers also argues that Section 153.385, which contains the height limit, is not severable from Section 153.474 and would thus also be invalidated were Conteers to succeed on its claims.  (*Id.* at 9-10.)  In their reply in support of their Motion for Judgment on the Pleadings, Defendants do not respond to any of Conteers' arguments with regard to standing and appear to have abandoned their argument.  (*See* Doc. No. 26.)  The Court agrees with Conteers that it has standing to pursue its first and second causes of action.

The Supreme Court has described the three requirements of constitutional standing as follows:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see id.*, at 756, 104 S.Ct., at 3327; *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore, supra,* 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct

> complained of—the injury has to be "fairly ... trace[able] to the challenged action of
> the defendant, and not ... th[e] result [of] the independent action of some third party
> not before the court."  *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S.
> 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).  Third, it must be "likely," as
> opposed to merely "speculative," that the injury will be "redressed by a favorable
> decision."  *Id.,* at 38, 43, 96 S.Ct., at 1924, 1926.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In addition, "[t]he party invoking

federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.

In *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, the plaintiff, a company that erects

and operates advertising signs, applied nine times for zoning permits to allow it to display billboards.

503 F.3d 456, 458 (6th Cir. 2007).  All of the plaintiff's applications sought to post signs that violated

the township's size and height requirements, and the township denied each application.  *Id.* at 459-

61.  Thereafter, the plaintiff, as well as some of its clients, filed suit challenging the validity of the

township's "off-premises advertising ban, though not the size and height restrictions, and the validity

of the permitting process because it lacked 'procedural safeguards.'"  *Id.* at 460.  On appeal, the Sixth

Circuit affirmed the lower court's finding that the plaintiffs lacked standing because they could not

satisfy the redressability requirement.  *Id.* at 461-62.  The court held that even if it invalidated the

contested provisions, "that would not redress plaintiffs' injury because the size and height restrictions

still would preclude the township from approving their sign applications and thus still would preclude

plaintiffs from erecting each of these signs."  *Id.*

However, the Sixth Circuit recently distinguished its holding in *Midwest Media* in

circumstances similar to those presented here.  In *Int'l Outdoor, Inc. v. City of Troy, Michigan*, the

plaintiff applied for a permit for two billboards that exceeded the city's size, height, and set-back

requirements.  Nos. 19-1151/1399, 2020 WL 5269822, at *1 (6th Cir. Sept. 4, 2020).  The city denied

the application, and the plaintiff then applied for variances to permit the billboards despite not

14

meeting the specified requirements.  *Id.*  The city denied the plaintiff's application for variances as well.  *Id.*  Subsequently, the plaintiff challenged the constitutionality of the ordinance that delineated the conditions necessary for the grant of a variance.  *Id.* at *2.  Relying on *Midwest Media*, the city argued that the plaintiff lacked standing "because it had not specifically alleged that the section of the ordinance regulating the size, height, and setback of signs was invalid, and that such restrictions would preclude [the plaintiff] from erecting its billboards regardless of other provisions of the Sign Ordinance."  *Id.* at *6.  The Sixth Circuit rejected the city's argument, explaining:

> [T]his case is distinguishable from both *Midwest Media* and *Prime Media*: the variance provision of the City of Troy Sign Ordinance challenged in Count I is not independent from other provisions of the ordinance, but rather inextricably linked to them by providing a way of relaxing the very restrictions imposed by the Sign Ordinance.  It would amount to circular logic to say that [the plaintiff] lacks standing to challenge the ordinance because it challenges the very provision that gives it standing to challenge the ordinance.  Such an approach would render the constitutionality of most variance provisions unreviewable.

*Id.* at *8.

Defendants also rely on *Midwest Media* to argue that Conteers lacks standing because a successful challenge to the City's conditional use ordinance or some other aspect of the permit process would not allow Conteers to erect the proposed billboard, as the billboard exceeds the height limitation in Section 153.385(A)(6).  (Doc. No. 14 at 6-7.)  Defendants' argument lacks merit for two reasons.

First, Conteers has adequately alleged that the height limitation in Section 153.385(A)(6) does not apply to its proposed billboard.  The City's ordinance limiting billboards' heights provides that "[n]o ground bulletin whose supports and braces are of steel or other approved noncombustible material, *and whose face is of noncombustible construction FRTW wood* as approved by the Superintendent of Building Inspection and Regulation shall exceed the height district as found in this

code or of a maximum height of fifty feet, whichever is less." A.C.O. § 153.385(A)(6) (emphasis added). In its Complaint, Conteers specifically alleges that the face of its proposed billboard is made primarily of steel, not noncombustible construction FRTW wood. (Doc. No. 1 at ¶¶ 35-36.) Based on the plain language of the ordinance limiting its application to billboards "whose face is of noncombustible construction FRTW wood," the height limit does not appear to apply to Conteers' billboard. Defendants offered no response to this argument in their reply in support of their Motion for Judgment on the Pleadings. Thus, in contrast to the plaintiffs in *Midwest Media*, Conteers has adequately alleged that its billboard did not violate any independent size or height requirements. Accordingly, at this stage, Conteers has shown that if it successfully challenges Section 153.474's general conditional use standards, it will have the right to erect its proposed billboard.

Second, even if the height limitation is applicable to Conteers' proposed billboard, Section 153.474 is linked to the height limitation because it provides a way for the City Council to relax it. Conteers challenges the general standards applicable to conditional uses provided in Section 153.474, which are incorporated into the ordinance that provides the specific requirements applicable to billboards. If the general conditional use criteria are met, the City Council may permit a billboard to vary from the specific size, height, and set-back requirements for billboards. A.C.O. § 153.385(F) ("Council may except or increase any of the provisions in this chapter consistent with the provisions of Section 153.474."). Because these two provisions are connected—similar to the ordinances at issue in *Int'l Outdoor*—Conteers has standing to pursue its first and second causes of action. *See Int'l Outdoor*, 2020 WL 5269822, at *8.[4]

---

[4] As a result of the holding above, the Court need not address the parties' arguments with respect to severability in relation to standing. However, the Court does address severability below in conjunction with its determination of the appropriate scope of the preliminary injunction.

16

### iii. Constitutionality of Contested Ordinances

Independent of their argument with respect to standing, Defendants also argue that Conteers' first and second causes of action should be dismissed because the Zoning Code does not contain unconstitutional prior restraints on speech.  (Doc. No. 14 at 9-16.)  In particular, Defendants contend the challenged ordinances are content-neutral regulations that satisfy the standards set forth in *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002).  (*Id.* at 10.)  Conteers does not analyze its claims under the *Thomas* framework, but claims that Section 153.474 is an improper prior restraint on speech because (1) it lacks narrow, objective, and definite standards to guide the City Council in deciding whether to permit the erection of a billboard, and (2) it lacks appropriate procedural safeguards.  (Doc. No. 24 at 10-16.)  While the Court agrees with Defendants that the *Thomas* framework is appropriate to apply in this case, the Court concludes that Conteers has adequately alleged a claim based on the lack of adequate standards to guide the City Council's discretion.

"The First Amendment, applicable to states through the Fourteenth Amendment, protects freedom of speech from laws that would abridge it."  *Int'l Outdoor*, 2020 WL 5269822, at *3.  "A prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur.'"  *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)).  Any such restraint "[bears] a heavy presumption against its constitutional validity, and a party who seeks to have such a restraint upheld thus carries a heavy burden of showing justification for the imposition of such a restraint."  *Id.* (quoting *Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002)).

In deciding whether a sign ordinance is an unconstitutional prior restraint on speech, courts "must first determine which of two possible analytical frameworks to apply."  *H.D.V.-Greektown,*

17

*LLC v. City of Detroit*, 568 F.3d 609, 620 (6th Cir. 2009).  "The first framework is that announced by the Supreme Court in *Freedman v. Maryland*, 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and elaborated upon in later cases."  *Id.*  Under the *Freedman* framework, ordinances must contain precise and objective criteria on which government officials or agencies make their decisions and provide certain procedural safeguards, such as requiring prompt decision making by the officials reviewing applications.  *Id.* at 620-21.  However, the Supreme Court has held that the *Freedman* framework does not apply to content-neutral time, place, and manner restrictions.  *Thomas*, 534 U.S. at 322.  Instead, in *Thomas*, the Supreme Court laid out less stringent requirements that govern the constitutionality of content-neutral regulations.  *Id.* at 323.

Thus, the Court must first decide whether Section 153.474, which sets forth the general conditional use requirements that Conteers asserts are unconstitutional, qualifies as a content-neutral time, place, and manner restriction.  "Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'"  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).  More specifically, "[a]n ordinance is not a content-based regulation of speech if (1) the regulation controls only the places where the speech may occur, (2) the regulation was not adopted because of disagreement with the message that the speech conveys, or (3) the government's interests in the regulation are unrelated to the content of the affected speech."  *H.D.V.-Greektown*, 568 F.3d at 621.

Here, Section 153.474, which is incorporated by Section 153.385(F), does not distinguish between various types of outdoor advertising by content.  Indeed, there is no provision in either ordinance that would appear to allow the City Council to reject a billboard application due to the

18

message it contains. Instead, the conditional use standards set forth in Section 153.474 involve content-neutral factors, such as the fit of the use in the surrounding area, whether the use will be hazardous to neighboring uses, and whether the use will be adequately served by public facilities. As such, Section 153.474 is a content-neutral time, place, and manner restriction. The Court also notes that Conteers appears to concede this point, as it has not argued that the challenged provisions are content based.

Accordingly, the Court must apply the *Thomas* framework to Conteers' claims. In *Thomas*, the Supreme Court held that "an ordinance (1) must contain adequate standards to guide the official's decision, (2) must not be based on the content of the message, (3) must be narrowly tailored to serve a significant government interest, and (4) must leave open ample alternatives for communication." *H.D.V.-Greektown*, 568 F.3d at 623. There is no requirement under the *Thomas* framework, however, "that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*." *Thomas*, 534 U.S. at 322. For example, content-neutral ordinances need not contain a brief, specified time limit for making a decision or require the decisionmaker to specify the grounds for denying an application. *H.D.V.-Greektown*, 568 F.3d at 624.[5]

With respect to the first requirement under the *Thomas* framework, the Supreme Court has explained that "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Thomas*, 534 U.S. at 323. Thus, "[w]here the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that

---

[5] As a result, the Court finds Conteers' arguments regarding the lack of various procedural safeguards in the Zoning Code lack merit. (*See* Doc. No. 24 at 15-16.)

he will favor or disfavor speech based on its content." *Id.* As a result, the Supreme Court recognized that it has "thus required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Id.*

The ordinance at issue in *Thomas* met this standard, as it permitted the denial of a permit to conduct events at a park for "reasonably specific and objective" grounds, such as "when the application is incomplete or contains a material falsehood or misrepresentation; when the applicant has damaged Park District property on prior occasions and has not paid for the damage; when a permit has been granted to an earlier applicant for the same time and place; when the intended use would present an unreasonable danger to the health or safety of park users or Park District employees; or when the applicant has violated the terms of a prior permit." *Id.* at 324. The Supreme Court found these grounds did "not leave the decision 'to the whim of the administrator.'" *Id.* (quoting *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 133 (1992)); *see also H.D.V.-Greektown*, 568 F.3d at 623 (upholding sign ordinances that contained "very particular requirements for signs, including limitations on size, height, location, area, and setback conditions," that "render[ed] the decision of whether to grant or deny an application virtually ministerial").

In contrast, applying the *Thomas* framework, multiple courts have held that ordinances containing standards almost identical to those at issue in this case provided unduly broad discretion to government officials. For instance, in *CBS Outdoor, Inc. v. City of Royal Oak*, the plaintiff argued that the special land use provisions of the relevant zoning ordinance improperly granted the city unbridled discretion to approve or reject a billboard when relevant factors included whether the land use (1) "[w]ill be harmonious and in accordance with the general objectives or any specific objectives of the Master Plan;" (2) "[w]ill be designed, constructed, operated, and maintained so as to be

harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the area;" and (3) "[w]ill not be hazardous or disturbing to existing uses or uses reasonably anticipated in the future." No. 11–13887, 2012 WL 3759306, at *6 (E.D. Mich. Aug. 29, 2012). The court found that "the vague, ambiguous, and arbitrary 'standards' in this case do not qualify as 'narrow, objective, and definite standards' required by the Supreme Court," and held that the "Defendant's special land use permit, when applied to billboards, is an unconstitutional prior restraint on speech." *Id.*

Likewise, in *CBS Outdoor, Inc. v. City of Kentwood*, the plaintiff challenged the constitutionality of a zoning ordinance that contained the following criteria for zoning and land use decisions: (1) "whether the request 'preserves the health, safety, and welfare of the public, and is in harmony with the general purpose and intent of this ordinance;'" (2) "whether the request 'may have a substantial and permanent adverse effect on neighboring property;'" (3) "whether the request 'is generally aesthetically compatible with its surroundings;'" (4) "the proposed use must '[b]e designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance, with the existing or intended character of the general vicinity;'" and (5) "[t]he construction or maintenance of a billboard may not act as a detriment to adjoining property, act as an undue distraction to traffic on nearby streets, or detract from the aesthetics of the surrounding area." No. 1:09–CV–1016, 2010 WL 3942842, at *9 (W.D. Mich. Oct. 6, 2010). The court held the provisions at issue were unconstitutional, concluding:

> [T]he provisions of the Zoning Ordinance at issue here convey broad discretion on the Planning Commission without any objective limits as a check against denial based solely upon the content of the speech of the applicant. Although some cases may present a close question as to whether particular standards sufficiently cabin an official's discretion to ameliorate First Amendment concerns, the provisions at issue

21

> in the instant case are not narrowly drawn and are bereft of any standards that are even arguably objective.

*Id.*; *see also Int'l Outdoor*, 2020 WL 5269822, at \*4 (holding variance scheme provided unbridled discretion because "[t]he standards for granting a variance contained multiple vague and undefined criteria, such as 'public interest,' 'general purpose and intent of this Chapter,' 'adversely affect[ing],' 'hardship,' and 'practical difficulty,'" and "even meeting these criteria did not guarantee grant of a variance, since the Board retained discretion to deny it"); *Ellinos, Inc. v. Austintown Twp.*, 203 F. Supp. 2d 875, 884-85 (N.D. Ohio 2002) (invalidating general conditional use standards as applied to sexually oriented businesses that were "nebulous, vague and prone to subjectivity," including the requirements that the proposed use be "'harmonious and appropriate in appearance with the existing or intended character of the general vicinity,' while not changing 'the essential character of the same area'").

Here, Conteers argues that the standards for granting a conditional use permit in Section 153.474 do not adequately guide the City Council's decision. (Doc. No. 24 at 11-16.) Although Conteers frames its claims as challenging the constitutionality of Section 153.474 as a whole, Conteers only specifically attacks the use of subjective language in Sections 153.474(A), (B), (C), and (H). (*See id.* at 11.) Indeed, these are the only potentially relevant provisions, as Defendants concede that the other provisions of Section 153.474 are wholly inapplicable in considering a digital, dynamic display billboard, such as Conteers' proposed billboard. (Doc. No. 14 at 12 n.6.) Thus, Defendants' arguments also are limited to Sections 153.474(A), (B), (C), and (H), which they argue sufficiently cabin the City Council's discretion with respect to the approval of billboards. (*See id.* at 12-13.) As a result, the Court will address the constitutionality of Sections 153.474(A), (B), (C), and

(H) specifically, and finds that Conteers has adequately alleged that the language of Sections 153.474(A), (B), (C), and (H) does not adequately limit the City Council's discretion.

In order to grant a conditional use permit, Section 153.474 requires that the use "be harmonious with and in accordance with the general objectives of the City's Comprehensive Plan;" "be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the same area;" "not be hazardous or disturbing to existing or future neighboring uses;" and "not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance."  A.C.O. §§ 153.474(A), (B), (C), and (H).  Many of these terms are highly subjective and undefined, such as "harmonious," "appropriate in appearance," "disturbing," and "major importance."  Such nebulous and vague terms are insufficient to guide officials' discretion. Moreover, even if an applicant satisfies these vague requirements, the ordinance does not require the City Council to grant a conditional use permit.  As such, Conteers has adequately alleged that Sections 153.474(A), (B), (C), and (H) provide unbridled discretion to the City Council to grant or deny conditional use permits for billboards and constitute unconstitutional prior restraints on speech.

Defendants argue that Section 153.474 does provide adequate standards to guide the City Council's decision despite the inclusion of vague and undefined terms because the "normally amorphous terms['] placement alongside the phrases 'existing or intended character of the general vicinity,' 'essential character of the same area,' and 'existing or future neighboring uses' militates against an expansive reading of the terms, confined as they are to concerns about land use and planning."  (Doc. No. 26 at 5.)  Defendants further contend that "[t]he concepts of 'harmonious and appropriate in appearance with the existing or intended character of the general vicinity [and]

23

essential character of the same area' and 'disturbing to existing or future uses neighboring uses' [sic] have particular meaning and usage in land use and planning compatibility determinations, particularly in the conditional use process.'" (*Id.* at 5-6.) The Court finds Defendants' arguments unpersuasive, as courts have repeatedly rejected almost identical language for failing to appropriately cabin officials' discretion in similar contexts. *See, e.g.*, *CBS Outdoor*, 2012 WL 3759306, at *6.

Defendants also assert that the City Council is further guided by the advisory recommendation from UDHPC. (Doc. No. 14 at 13.) However, according to the Complaint, UDHPC's recommendation incorporates similarly subjective and vague considerations regarding the aesthetic fit of the proposed conditional use. (Doc. No. 1 at ¶¶ 39-41.) Moreover, there is no indication that City Council is bound in any way to follow UDHPC's recommendation. As a result, this additional factor cannot save the City's conditional use standards. Consequently, the Court concludes Conteers has adequately alleged that the City's Zoning Code contains an unconstitutional prior restraint on speech.

Based on this holding, as well as the Court's holdings above with respect to the Court's jurisdiction and Conteers' standing to pursue its claims, Defendants' Motion for Judgment on the Pleadings is denied.

## III.   Conteers' Motion for Preliminary Injunction

### a.  Standard of Review

"In general, courts must examine four factors in deciding whether to grant a preliminary injunction: (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable injury absent injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether the public interest will be served

by an injunction." *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 539-40 (6th Cir. 2017). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). However, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). In addition, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573. "The party seeking the injunction must establish its case by clear and convincing evidence." *Draudt v. Wooster City Sch. Dist. Bd. of Educ.*, 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003).

> **b. Analysis**

> **i. Likelihood of Success on the Merits**

First, the Court considers whether Conteers "has demonstrated 'a strong likelihood of success on the merits.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). Nonetheless, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.*

Conteers asserts that it has a strong likelihood of success of proving that the City's Zoning Code contains unconstitutional prior restraints on speech. (Doc. No. 5-1 at 7-11; Doc. No. 23 at 10-13.) In support of its claims, Conteers has submitted a variety of evidence, including an affidavit

25

from one of Conteers' members attesting to many of the allegations in the Complaint, meeting minutes from the various commissions that reviewed Conteers' application for a billboard permit, and deposition testimony from the City Council's President, Margo Sommerville. (Doc. Nos. 5-2 to 5-5, 23-1, 23-2.) In support of its Motion for Preliminary Injunction, in addition to reiterating the arguments set forth in its opposition to Defendants' Motion for Judgment on the Pleadings, Conteers also cites to Sommerville's testimony as further support for its claim that Section 153.474 does not adequately guide the City Council. Specifically, Conteers points out that Sommerville testified that the undefined terms at issue in Sections 153.474(A), (B), (C), and (H)—"harmonious," "appropriate in appearance," "disturbing," and "major importance"—could mean different things to different people. (Doc. No. 23-1 at 17:11-22, 19:24-21:4, 28:19-29:24, 55:3-12.)

In response, Defendants rely on the same arguments set forth in their Motion for Judgment on the Pleadings, namely that Conteers lacks standing to pursue its first and second causes of action, that the Court lacks jurisdiction over Conteers' administrative appeal, and that the Zoning Code contains constitutional content-neutral time, place, and manner restrictions. (*See* Doc. No. 12 at 3-17.)

Upon review of the evidence, based on the same reasoning set forth above with respect to Defendants' Motion for Judgment on the Pleadings, the Court finds that Defendants' arguments with regard to jurisdiction and standing lack merit, and that Conteers has shown that it is likely to succeed on its First Amendment claims. Specifically, Conteers has submitted evidence establishing a substantial likelihood that the requirements in Sections 153.474(A), (B), (C), and (H), which are incorporated by Section 153.385(F), provide unbridled discretion to the City Council to grant or deny conditional use permits for billboards and therefore constitute unconstitutional prior restraints on

26

speech on their face and as applied to Conteers. As such, this factor favors the issuance of a preliminary injunction.

However, to appropriately assess the extent of any preliminary injunction, the Court must also determine whether Conteers has established a substantial likelihood of showing that Sections 153.474(A), (B), (C), and (H) are not severable from the other sections of Articles 9 and 14, such that Defendants should be enjoined from enforcing those articles in full. Generally, Conteers asserts that Section 153.474 is not severable, as striking that section by itself would fundamentally disrupt the City's statutory scheme and not give effect to the City's intent. (Doc. No. 5-1 at 12-14.) In response, Defendants argue that Section 153.385(F) incorporating Section 153.474 is severable from the rest of Article 9, as Section 153.385(F) was not added to Article 9 until 2009, before which the rest of Article 9 operated independently. (Doc. No. 12 at 6-7.) They also point out that the City's Code of Ordinances contains a severability provision. (*Id.* at 7 n.4.) Defendants do not address whether Section 153.474 is severable from Article 14. The Court finds that Conteers has not shown a substantial likelihood of succeeding on its claims that Articles 9 and 14 should be invalidated in full, as the challenged provisions likely are severable.

"Severability of a local ordinance is a question of state law." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). In Ohio, courts employ "a three-part test to determine whether an invalid portion of a statute can be severed or the entire law must be struck down." *State v. Noling*, 149 Ohio St.3d 327, 335 (2016). Specifically, courts must assess the following: "(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part

27

is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"  *Id.* (quoting *Geiger v. Geiger*, 117 Ohio St. 451, 466 (1927)).  "A portion of a statute can be excised only when the answer to the first question is yes and the answers to the second and third questions are no."  *Id.*  The presence of a severability provision also creates a presumption of statutory severability.  *See Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 202 (6th Cir. 1997).

Here, the City's Code of Ordinances provides:  "If any provision of a section of these codified ordinances or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."  A.C.O. § 10.07.  Thus, Sections 153.474(A), (B), (C), and (H) are presumptively severable.  The Court finds that, at this stage in the proceedings, Conteers has not shown a substantial likelihood of overcoming that presumption.

First, with respect to Article 14, if Sections 153.474(A), (B), (C), and (H) are stricken, the remaining parts of Section 153.474 and Article 14 as a whole may be read and stand by themselves and the insertion of additional words or terms is not necessary.  To wit, without the unconstitutional provisions, Section 153.474 would contain only the requirements set forth in Sections 153.474(D)-(G), which could otherwise stand independently and function as before without additional clarifying language.  Likewise, the rest of Article 14, which provides additional regulations related to conditional uses, such as the permit application and approval procedure, would be unaffected.

Conteers argues that severance is not appropriate because striking just Section 153.474 would eliminate the standard applied to all conditional uses, leaving only the requirements specific to certain

28

types of conditional uses.  (Doc. No. 5-1 at 12.)  Conteers asserts this would leave the City Council without a mechanism to review and approve new kinds of uses, which Article 14 states are "appearing daily."  (*Id.*)  As a result, Conteers further asserts that Section 153.474 is so connected with the general scope of Article 14 that it would be impossible to give effect to the intent of Article 14 if only Section 153.474 is stricken.  (*Id.*)  However, Conteers assumes Section 153.474 should be stricken in its entirety.  As noted above, because Conteers only challenges the subjective language in Sections 153.474(A), (B), (C), and (H), those are the only provisions that need to be stricken.  This leaves several other requirements under Section 153.474 that Conteers has not challenged that the City Council may continue to utilize to review and approve new conditional uses.  As such, especially given the presumption against severance, Sections 153.474(A), (B), (C), and (H) are likely not so connected with the general scope of Section 153.474 or Article 14 as a whole as to make it impossible to give effect to the apparent intention of the City Council if Sections 153.474(A), (B), (C), and (H) are stricken.  Thus, Conteers has not met its burden to establish a sufficient likelihood of success on its claims that those provisions may not be severed from Article 14.

Sections 153.474(A), (B), (C), and (H) also likely may be severed from Article 9.  Again, if those provisions are stricken, Article 9 can be read and stand by itself and the insertion of additional words or terms is not necessary.  Indeed, even Section 153.385(F) of Article 9, which incorporates Section 153.474's conditional use standards, likely need not be modified.  Because the unconstitutional portions of Section 153.474 have been severed, Section 153.385(F) would only incorporate the remaining requirements in Section 153.474 that have not been challenged.

In addition, Conteers has not shown that Sections 153.474(A), (B), (C), and (H) are so interconnected with Article 9 as to make severance inappropriate.  Article 9 was enacted in 1949 and

existed without reference to Section 153.474 until the City amended it in 2009. (Doc. No. 12 at 6; Doc. No. 12-5.) As such, prior to 2009, Article 9 did not require individuals to meet the Zoning Code's conditional use standards before obtaining a permit to install a billboard. That is, Article 9's size, height, and set-back requirements operated without reference to Section 153.474 for nearly sixty years, which strongly indicates that these provisions are not so connected to the unconstitutional portions of Section 153.474 that Article 9 must be invalidated in its entirety.

As a result, the likelihood of success factor favors the issuance of a preliminary injunction, but only to enjoin Defendants from enforcing Sections 153.474(A), (B), (C), and (H) against Conteers, rather than precluding the enforcement of Articles 9 and 14 in their entirety.

### ii. Irreparable Injury, Harm to Others, and Public Interest

The other factors that courts must consider when deciding whether to issue a preliminary injunction are whether the plaintiff will suffer irreparable injury without the injunction, whether a preliminary injunction would cause substantial harm to others, and whether the public interest will be served by an injunction. *Flight Options*, 863 F.3d at 539-40. Conteers asserts that when First Amendment rights are at issue, these additional factors are summarily satisfied once a plaintiff has established a likelihood of success on the merits. (Doc. No. 5-1 at 14.) Defendants do not dispute this assertion, but contend the other factors are not satisfied based on their earlier arguments that the contested ordinances are constitutional. (Doc. No. 12 at 17-19.) Defendants also cursorily argue that Conteers can be fully compensated by monetary damages. (*Id.* at 18.) The Court agrees with Conteers that these factors largely collapse once a plaintiff has shown a likelihood of success on the merits of its First Amendment claims, and, therefore, these additional factors weigh in favor of a preliminary injunction.

"When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). "This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted). Specifically, with regard to whether the plaintiff will suffer an irreparable injury, "it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib.*, 154 F.3d at 288 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, when a party establishes a substantial likelihood of success on the merits of its First Amendment claim, "it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Id.* "Concomitantly, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004). Finally, "the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Connection Distrib.*, 154 F.3d at 288 (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).

In this case, Conteers has established a substantial likelihood of success on the merits of its First Amendment claims and that its free speech rights have been violated by the City's enforcement of Sections 153.474(A), (B), (C), and (H), as incorporated by Section 153.385(F).  As a result, Conteers has also demonstrated that it would suffer irreparable injury absent an injunction, that

Defendants would not be substantially harmed by an injunction, and that the public interest favors an injunction.

Because all of the factors favor the issuance of a preliminary injunction, the Court will grant Conteers' Motion for a Preliminary Injunction enjoining Defendants from enforcing Sections 153.474(A), (B), (C), and (H) against Conteers.[6]

### iii. Bond

Finally, Conteers argues that it should not be required to post a bond in conjunction with the issuance of the preliminary injunction.  (Doc. No. 5-1 at 14-15.)  Specifically, Conteers asserts that whether to require a bond is left to a court's discretion, and that a bond is not appropriate in this case because Conteers has a high probability of success on its claims, Defendants are municipal defendants that likely would not incur any significant cost or monetary damages from the issuance of the injunction, and demanding a bond would injure Conteers' constitutional rights.  (*Id.*)  Defendants did not respond to Conteers' arguments in this regard.

Fed. R. Civ. P. 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Although the language of Rule 65(c) appears to be mandatory, the rule in the Sixth Circuit "has long been that the district court possesses discretion over whether to require the posting of security."  *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

---

[6] The Court notes that no hearing in conjunction with Conteers' Motion for Preliminary Injunction was necessary because no facts material to the preliminary injunction are in dispute. *See Certified Restoration*, 511 F.3d at 552 ("[A] hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law.").  In addition, the Court permitted Conteers to engage in the limited discovery that it requested.  (*See* Doc. No. 22.)  Defendants did not request permission to engage in any discovery.  Nor did they request that the Court hold a hearing.

Thus, "[w]hile a district court must consider whether security is appropriate, the court need not actually require security—instead, the decision is left to the sound discretion of the court." *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900, 925 (E.D. Mich. 2003).

Because Defendants have not argued that a bond should be required, demonstrated any harm it would suffer as a result of an injunction, or suggested what amount may be appropriate for Conteers to post as security, the Court concludes it is appropriate not to require security in this case and will not require Conteers to post a bond.

**IV.    Conclusion**

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Doc. No. 14) is DENIED.

Conteers' Motion for Preliminary Injunction (Doc. No. 5) is GRANTED IN PART and DENIED IN PART.  IT IS HEREBY ORDERED that:

a.  Defendants are enjoined from enforcing Sections 153.474(A), (B), (C), and (H) of Article 14 of the City's Zoning Code, codified as Chapter 153 of the City's Code of Ordinances, against Conteers.

b.  This Order shall remain operative until modified or rescinded by the Court.

To the extent that Conteers' Motion for Preliminary Injunction seeks relief in addition to that granted above, it is DENIED.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  September 15, 2020          U. S. DISTRICT JUDGE

33